# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Zagel | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 97 C 5131 | **DATE** | 2/27/2002 |
| **CASE TITLE** | BERGSTROM, INC. vs. SIEMENS ELECTRIC, LTD., ET AL | | |

**MOTION:**
[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due _____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] **Motion (89-1) for reconsideration is denied.**

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | MAR 05 2002 | |
| ✓ | Docketing to mail notices. | | date docketed | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| DW | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | | mailing deputy initials |

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

BERGSTROM, INC., an Illinois
Corporation,

      Plaintiffs,

      v.

SIEMENS ELECTRIC, LTD., A Canadian
Corporation, and SIEMENS
AUTOMOTIVE, LTD., a Canadian
Corporation,

      Defendants/Third-Party Plaintiffs,

      v.

EASTERN SINTERED ALLOYS, INC., A
Pennsylvania Corporation,

      Third-Party Defendants.

No. 97 C 5131
Judge James B. Zagel



DOCKETED
MAR 0 5 2002

## MEMORANDUM OPINION AND ORDER

Third-party defendant Eastern Sintered Alloys, Inc. ("ESA") seeks reconsideration of my ruling of November 14, 2001 (the "11/14/01 Order"), granting the motion of defendants and third-party plaintiffs Siemens Electric Ltd. and Siemens Automotive, Ltd. (together, "Siemens Electric") for a protective order pursuant to Fed. R. Civ. Pro. 36(c). The 11/14/01 Order barred ESA's newly-designated expert, Dr. Randall German, from offering previously undisclosed testimony – the so-called "electrical issues" – espousing a new theory of liability in this case.

Briefly, this case concerns blower motors that Bergstrom, Inc. ("Bergstrom") purchased from Siemens Electric and incorporated into the HVAC unit that Bergstrom sold to Navistar. Navistar included the HVAC units in the commercial vehicles that it manufactured and sold to

consumers. Some of the blower motors contained ball bearings manufactured by ESA. Certain of the motors failed and Bergstrom blames Siemens Electric for selling the motors with bad ball bearings. Siemens Electric, in turn, blames ESA for selling the bad ball bearings. And so it went until now.

The road to the conclusion of discovery has been long and tortuous. As I noted in my 11/14/01 Order, expert discovery was originally to have been concluded by February 2, 1999. At the request of one or more of the parties, it was extended to January 31, 2000, March 31, 2000, December 1, 2000 and, again, to April 16, 2001. On April 6, 2001, ESA filed an emergency motion to extend discovery and to withdraw its expert witness, Norb Arnold, who was unable to travel due to illness. I granted ESA's eleventh-hour emergency request and allowed ESA to substitute Dr. German for Mr. Arnold. Dr. German wrote an expert report advancing a new theory of liability – that it was an electrical circuit problem in Siemens Electric's motor that caused the bearings to overheat, lose oil and fail. It is undisputed that neither ESA's initial expert report nor its rebuttal report identified this area of testimony.

Given the timing of the newly-emerged theory, and taking into account the nature of the expert testimony, I find that to allow ESA to do present testimony of the "electrical issues" would be unduly prejudicial to Bergstrom and Siemens Electric in particular and to the litigation process more generally. The prejudice to the parties and the process on which I will elaborate is not explicit in the case law but I believe that it is, in fact, the rationale that underlies many of the decisions that exclude evidence. Looked at in a practical way, a party faced with a new defense or a new piece of evidence will not necessarily have to spend a lot of money litigating the issue – it may well be a manageable burden for Siemens Electric and Bergstrom here – rather, the

2

prejudice that the courts must be addressing in excluding such new evidence is the prejudice of

the parties having moved forward through the litigation process without the opportunity to take

the evidence into account. *See, e.g., THK America, Inc. v. NSK, Ltd.*, 917 F. Supp. 563, 568

(N.D. Ill. 1996) (excluding evidence because to allow a "new contention" into evidence would be

prejudicial); *Softel, Inc. v. Dragon Med. & Scientific Comms., Inc.*, 118 F.3d 955, 962 (2d Cir.

1997), *cert. denied*, 523 U.S. 1020 (1998) (finding prejudicial the potential inclusion of evidence

that would have "redrawn the boundaries of the case"). It is not the expense of formulating a

counter-argument to the new theory or evidence but the waste of having proceeded without it to

this point. *See, e.g., Grassi v. Information Res., Inc.*, 63 F.3d 596, 603 (7th Cir. 1995) (upholding

the exclusion of evidence that was offered for an "entirely new purpose"); *ELCA Enters., Inc. v.*

*Sisco Equip. Rental & Sales, Inc.*, 53 F.3d 186, 189 (8th Cir. 1995) (upholding the exclusion of

evidence that would have "switched the basis" of the alleged claim).

The timing of the emergence of the new liability theory is significant because the sooner

in a case the theories of liability are developed, the sooner all parties can make decisions about

litigation strategy, including cost and benefit analyses about the strength of their respective cases

and about the possibility of settling the matter before trial. The parties to a case proceed on the

basis of the theories espoused by each of their experts. A late addition to the calculation renders

useless some or all of what has gone before, doing a disservice to the parties and to the litigation

process as a whole.

This is a commercial case involving three corporate entities, the kind of case that very

likely would be a candidate for settlement. In fact, two settlement conferences took place before

this new theory was espoused. Were this new theory of liability to have come to light in a more

timely manner, Siemens Electric and Bergstrom might have assessed the case differently and proceeded differently through the litigation and the settlement conferences to date. Concretely, if Siemens had known of this additional theory of liability, it might have settled with ESA or its defense against Bergstrom might have been different or more vigorous. And, although more remote given its place in this particular dispute, the new theory might have influenced Bergstrom's behavior and strategy to date as well. For example, Siemens Electric may have decided early on simply to admit liability and concentrated its efforts on attacking damages instead of fighting a costly war on two fronts (liability and damages) against Bergstrom and one front (damages) against ESA. Also, Bergstrom may have been aided in knowing it could aim all of its arrows at Siemens Electric without worrying about having them deflected in the direction of ESA.

Of course, sometimes there is no avoiding this type of prejudice and an exception must be made. An inquiry into the nature of the testimony that ESA seeks to offer reveals that this is not a case that warrants such an exception. The testimony here relates to a theory of the liability of the case that is in no way conclusive and, were ESA to be permitted to offer it, would be subject to rigorous and lengthy rebuttal testimony. This is not a case where the results are more obvious, like those from, say, a DNA report where the evidence offered is much more likely to be incontrovertible and, thus, the injustice of excluding it apparent. This is simply one defense of many that could have been available to ESA, which still has any defense available to it that it developed over years of discovery before the substitution of its expert.

4

For the foregoing reasons, and under these circumstances, ESA's motion for

reconsideration [89-1] is DENIED.

ENTER:

James B. Zagel
United States District Judge

DATE: 27 Feb 2002